IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GRASSHOPPER MOTORCYCLES, LTD.,

            Plaintiff,

v.

TIM RIVERA d/b/a Better Built Backrests,

           Defendant.

OPINION AND ORDER

14-cv-320-slc

---

Since 2004, plaintiff Grasshopper Motorcycles LTD, LLC, has been in the business of manufacturing and selling a moon-shaped backrest designed to be attached behind the driver's seat of a motorcycle. Grasshopper advertises and sells its backrests throughout Wisconsin, the nation and internationally, using various Internet marketing channels such as eBay, Craigslist, Facebook and its own website. Its 2013 sales were approximately $333,000, with the majority of these sales occurring on eBay. According to Grasshopper, it has protectable, proprietary rights in the design of its motorcycle backrest and the goodwill associated with the Grasshopper name and its products.

Defendant Tim Rivera resides in Beloit, Wisconsin. Between the spring and fall of 2013, Grasshopper leased part of its commercial space to Rivera for business unrelated to the motorcycle industry. Soon thereafter, Grasshopper learned that Rivera, doing business as Better Built Backrests, was making a motorcycle seat backrest that looked a lot like Grasshopper's backrest, using online marketing that looked similar to Grasshopper's. In fact, Grasshopper learned that some customers had mistakenly purchased a backrest from Rivera, thinking it was a Grasshopper backrest. Grasshopper asked Rivera to stop selling his backrests, but Rivera refused.

So, on May 1, 2014, Grasshopper filed this lawsuit, stating that it was doing so "because of Rivera's ongoing manufacture, importing, marketing and/or sales of products using Grasshopper's Design for motorcycle seats (the 'Grasshopper Design'), which is a knockoff of Grasshopper's well known motorcycle seat and design (the 'Infringing Product')." Grasshopper's complaint seeks monetary and injunctive relief, and states these four causes of action against Rivera:

>   (1) Trade Dress Infringement and Unfair Competition under Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a);
>
>   (2) violation of Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18;
>
>   (3) violation of Wisconsin's common law governing trade dress infringement and unfair competition; and
>
>   (4) misappropriation of plaintiff's style of doing business.

Rivera, who is representing himself in this action, denies that Grasshopper's design is "distinctive" or otherwise entitled to trade dress protection.

Grasshopper has moved for partial summary judgment, *see* dkt. 30; and Rivera has filed an untimely motion to dismiss the complaint. dkt. 54. I am denying both motions.

Grasshopper has moved for summary judgment on its first three causes of action. Central to its motion are Grasshopper's contentions that Rivera "admits he placed a false advertisement on the Internet that targeted the Plaintiff" and that Grasshopper has been damaged as a result. Plt's. Mot. for Partial Summ. Judg., dkt. 30, at 1. However, Grasshopper's allegations of false advertising are beyond the scope of its complaint: although the complaint states claims for unfair competition, it says nothing about any false or misleading advertising. Further, even if false advertising claims *did* appear in the complaint, these claims would fail on their merits. In

2

particular, Grasshopper has failed to produce any evidence of injury resulting from the alleged false advertising. A more detailed discussion of Grasshopper's motion is set out below.

I am denying Rivera's dismissal motion as well. Even if the motion is construed as a motion for summary judgment rather than a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), Rivera filed it too late. The deadline for filing any sort of dispositive motion was December 5, 2014. Rivera filed his motion on February 19, 2015, 2½ month late. Nothing in Rivera's motion suggests that he could not have filed the motion on time. Further, allowing him to file it now, with pretrial submissions due in less than two months, would prejudice both Grasshopper and this court by shifting time and resources away from trial preparation.

For the purpose of ruling on Grasshopper's summary judgment motion, I find the facts that follow to be relevant, material and undisputed. These facts are drawn from the parties' submissions and the record.

FACTS

The background facts are stated above and are incorporated herein by reference. As noted previously, Grasshopper and Rivera are competitors in the manufacture and sale of motorcycle backrests. Grasshopper has been in this business since 2004; Rivera entered the market in February 2014.

Rivera got the idea to build backrests after attending a trade show with Grasshopper's owner, Lonnie Alsteens, sometime in 2013. Rivera purchased materials to construct a backrest

in November 2013 and built his first one around January 2014. Before then, Rivera had never constructed motorcycle backrests and had not been trained in sewing or upholstery.

Rivera began advertising his backrests on the internet in February 2014, posting ads on eBay, Facebook and Craigslist and in all 50 states. These are the same markets in which Grasshopper sells its backrests. For purposes of this motion, I accept Grasshopper's contention that the photos, layout and wording that Rivera used in his on-line advertising were very similar to Grasshopper's.

In his advertisements, Rivera described his seats as having various qualities, including being "professionally sewn." In April 2014, he included a photo on his eBay advertisement that showed a black vinyl backrest that was labeled "My competitors Finished product," and which had large staples closing off the upholstery work. Next to this photo was a second photo of a nearly-identical backrest labeled "Better Built Finished Product," which was a more finished looking product without visible staples. Rivera admitted at his deposition that the stapled backrest depicted as his "competitors Finished product" was actually a backrest he built himself. According to Rivera, he made it to resemble the look of backrests made by his competitors, including Grasshopper, which in his view are inferior to his own because of the visible stapling.

At his deposition, Rivera testified that in approximately July 2014, eBay removed his advertisement from his eBay webpage because it violated eBay's policy against including "gratuitous information that doesn't describe the item being sold." Rivera explained that the "gratuitous information" to which eBay was referring was the photograph purporting to show his "competitors Finished product." In addition, he said that eBay removed his ads because they

4

contained language stating that his "product is much less expensive than the high-dollar OEM[1] products." Dep. of Tim Rivera, dkt. 39, at 56, line 21-23. Rivera removed the "competitor's product" photograph and the OEM language and re-listed his backrests on eBay, where he continues to advertise and sell his product.

OPINION

Grasshopper contends that the undisputed evidence shows that Rivera violated the Lanham Act, Wisconsin's Deceptive Trade Practices Act and Wisconsin common law by making false or misleading statements in his advertisements that were targeted at Grasshopper. According to Grasshopper, the following statements made by Rivera in 2014 were false:

> 1) that the photograph of the backrest with the stapled upholstery was his "competitor's finished product;" and
>
> 2) Rivera's backrests are "professionally sewn."[2]

Grasshopper asks the court to award it damages in the amount of $262,694, order Rivera to pay its costs and attorney fees, and enjoin Rivera from continuing to sell his backrests.

---

[1] "OEM" is an acronym for "Original Equipment Manufacturer." According to Wikipedia, the term is used generally "when one company makes a part or subsystem that is used in another company's end product." *See* http://en.wikipedia.org/wiki/Original_equipment_manufacturer.

[2] Grasshopper also contends that Rivera lied when he said that Better Built is an original equipment manufacturer ("OEM"). I am disregarding this contention because the evidence cited by Grasshopper–namely, Rivera's testimony at his deposition–fails to establish that Rivera said this. As set out in the facts, Rivera testified that the ad for which eBay sanctioned him contained language comparing his product with those made by OEMs. Rivera did not say that he claimed in his ad that *he* was an OEM.

**I. Grasshopper Did not Allege False Advertising in Its Complaint**

Grasshopper's asserted grounds for summary judgment are puzzling, considering that its complaint does not contain any allegations of false advertising. Although the complaint plainly alleges unfair competition and deceptive trade practices, these claims have their basis in Rivera's alleged copying and misappropriation of Grasshopper's backrest design, not in any alleged false statements about its products. Courts routinely reject such implicit attempts to amend the complaint during summary judgment. *See, e.g.*, *Daury v. Smith*, 842 F.2d 9, 15 (1st Cir. 1988) ("We will not rewrite plaintiff's complaint to contain a count that was not included in it .... No motion was made to amend the complaint. We do not think our duty to liberally construe the pleadings gives a plaintiff the license to amend the complaint by memorandum in the district court and by brief in the appellate court."); *Golodner v. City of New London*, No. 3:08-cv-1319, 2010 WL 3522489 at *9 (D. Conn. 2010) (refusing to consider plaintiffs' allegations that were "beyond the scope of the complaint" in ruling on defendant's motion for summary judgment); *Karath v. Board of Trustees*, No. 3:07-cv-1073, 2009 WL 4879553 at *3 (D. Conn. 2009) ("The Court will not permit plaintiff to amend his complaint by implication in response to summary judgment"); *Farrell v. Einemann*, No. CIVA 042088 (JAG), 2006 WL 1644826, at *2 (D. N.J. June 6, 2006) (declining to rule on claim argued on summary judgment that was not stated in complaint); *Beacon Journal Publishing Co., Inc. v. Gonzales*, No. 5:05-cv-1396, 2005 WL 2099787 at *2 (N.D. Ohio 2005) (same); *see also* 5 Wright & Miller, *Federal Practice and Procedure*, § 1286, at 558 (2d ed. 1990) ("the liberal construction accorded a pleading under Rule 8(f) does not require the courts to fabricate a claim that a plaintiff has not spelled out in his pleadings"). Although most of the cited cases involve a plaintiff's attempt to amend its brief in response to

6

a defendant's motion for summary judgment, I see no reason why the same rule should not apply when the plaintiff is the moving party on summary judgment. Indeed, basic due process principles require that a defendant have notice of the claims that are being brought against him *before* they are asserted as a ground for summary judgment.

Further, although Rivera has responded to Grasshopper's alleged facts in support of its false advertising claim, I do not understand him to be waiving his right to object to Grasshopper's implicit attempt to broaden the scope of its complaint to include false advertising. Notably, Rivera has offered no substantive response to the false advertising claims, limiting his response brief only to the trade dress claims actually alleged in the complaint. *See* Def.'s Br. in Opp., dkt. 41, at 1 (addressing only trade dress claim).

Accordingly, in the absence of a motion to amend the complaint, the false advertising claims upon which Grasshopper brings its summary judgment motion are not properly before the court and must be denied. However, because Grasshopper might otherwise seek leave to amend its complaint, for the sake of completeness I will address the claims on their merits. (For what it's worth, the court would deny leave to amend at this point on timeliness grounds, regardless of the merits of any new claim).

## II. Grasshopper Has Failed to Meet Its Burden on Summary Judgment

### A. Summary Judgment Standard

Summary judgment is proper where there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The rule

imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the requirements that Rule 56 imposes on the moving party are not onerous. The moving party need not "support its motion with affidavits or other similar materials negating the opponent's claim," but may discharge its initial burden by pointing out to the district court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id*. at 322.

When, however, the asserted ground for summary judgment is a claim on which the *moving* party will bear the burden of persuasion at trial, the moving party bears a heavier burden on summary judgment: "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). Once such an affirmative showing has been made, the burden of production shifts to the party opposing the motion and requires that party to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial. *Id*.

In this case, Grasshopper bears the burden of persuasion at trial on its claims. This means that to discharge its initial burden on summary judgment, it must present credible evidence that would establish all of the elements of its claims. Grasshopper has failed to do so.

### B. Lanham Act, 15 U.S.C. § 1125(a)

There are two bases of liability under the Lanham Act: (1) false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device (otherwise known as "false association" or "false endorsement") and (2) false representations in advertising concerning the qualities of goods or services ("false advertising"). *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993), *as amended on denial of reh'g* (Dec. 8, 1993) *abrogated on other grounds* by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Grasshopper contends that it is entitled to summary judgment on a claim asserting the second form of liability, false advertising. Under this subsection of the Act, Grasshopper must show the following:

> (1) the defendant made a false statement of fact about its product or another's product in a commercial advertisement;
>
> (2) the statement has a tendency to deceive or actually deceived a substantial segment of its audience;
>
> (3) the deception is material, that is, it is likely to influence purchasing decisions;
>
> (4) the defendant caused its false statement to enter interstate commerce; and
>
> (5) the plaintiff has been or is likely to be injured as a result, either by direct diversion of sales from itself to defendant or by a loss of good will that is associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). The required "false statement" may be either a statement that is "literally false" as a factual matter or a statement that is "literally true or ambiguous" but "implicitly convey[s] a false impression" or is

9

"misleading in context, or likely to deceive consumers." *Id*. at 820. When a statement is literally false, a plaintiff is not required to prove the second element; instead, actual or likely consumer deception is presumed. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999). However, when the statement is literally true or ambiguous, the plaintiff must prove that the statement is "misleading in context, as demonstrated by actual consumer confusion." *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1089 (7th Cir. 1994).

In this case, it is unnecessary to decide whether the two statements about which Grasshopper complains were literally false or merely had the potential to mislead. Even assuming, *arguendo*, that the two statements meet the rigorous test for literal falsity, Grasshopper must do more than prove literal falsity in order to recover damages. "In order to recover damages for a purported Lanham Act violation, the plaintiff 'must demonstrate that it has been damaged by actual consumer reliance on the misleading statements.'" *L.S. Heath & Son*, 9 F.3d at 575 (quoting *Web Printing Controls Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990) (in turn quoting *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir.1982)). *See also Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 693 (6th Cir. 2000) (literal falsity rule "has never permitted a plaintiff to recover marketplace damages without other proof that such damages occurred . . . [L]iteral falsity, without more, is insufficient to support an award of money damages to compensate for marketplace injury such as harm to goodwill."); *BASF Corp.*, 41 F.3d at 1085–88 (finding literal falsity but requiring further proof of marketplace damages); *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 376 (5th Cir. 2002) (affirming district court's grant of summary judgment where plaintiff failed to produce competent evidence indicating that consumers would have bought its tire inflator products

instead of defendants in absence of defendants' allegedly false and misleading statements); *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 941–43 (3d Cir. 1993) (affirming trial court decision granting injunctive relief but denying monetary damages despite finding of literal falsity).

Here, Grasshopper has failed to link Rivera's allegedly false statements with any harm to its business. To be sure, Grasshopper has adduced some evidence of customer confusion after Rivera entered the market with his backrests. Grasshopper points to a handful of affidavits from customers and employees who report that it is difficult on eBay to distinguish Rivera's backrest from Grasshopper's because of the similarity of the written advertisements and photos and because both backrests are listed for approximately the same price. Plt.'s PPFOF, ¶83 (citing Declarations of Earl Kemp, Troy Alsteens, John Roethle, Steven Kauper and Lonnie Alsteens). In addition, Alsteens provides anecdotal evidence of customers who purchased a Better Built backrest by mistake, intending to purchase a Grasshopper backrest. Dec. of Lonnie Alsteens, dkt. 33, at ¶¶ 40-44.

The problem with this evidence is that it shows customer confusion about the wrong thing. For purposes of a false advertising claim, Grasshopper must show that it lost sales because of Rivera's *false statements*, not by the appearance of Rivera's product or his marketing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S. Ct. 1377, 1391 (2014) ("a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising") (emphasis added). The latter is the domain of trade dress infringement, which, although alleged in the complaint, is not the subject of Grasshopper's motion. As far as false advertising goes, not one of the affiants even *mentions* the falsely-labeled photograph or the "professionally sewn" statement, much less that

he did not purchase a Grasshopper backrest because of the statements. Indeed, if what Grasshopper is claiming is true—that Rivera's online advertising looked so much like Grasshopper's that customers were misled into thinking it *was* Grasshopper's—then how *could* Rivera's false statements have hurt Grasshopper? Obviously, a customer believing he was viewing Grasshopper's posting for its backrests would not think the shoddy backrest shown on the "competitors Finished product" photo was Grasshopper's, and would be happy to know that Grasshopper's backrests were "professionally sewn."

Grasshopper's damages report does not advance its position, either. In calculating damages, Grasshopper's expert "assumed that the allegations in the Complaint are true and that Rivera's product infringes on the Grasshopper design." Expert Report of Catherine J. Durham, dkt. 40, at 4. As noted above, the complaint says nothing about false advertising. Thus, like the customer affidavits, Durham's report is relevant only to the alleged trade dress infringement, which is not the subject of this motion.

In sum, even assuming Rivera made statements in his eBay posting that were literally false, there is not one bit of evidence to suggest that these statements harmed Grasshopper in any way. Accordingly, this court has no basis to award damages to Grasshopper for Rivera's allegedly false or deceptive advertising.[3]

---

[3] Grasshopper presents no request or evidence that would support an award of injunctive relief. In fact, the ad in question displaying the falsely-labeled photograph is no longer running, and there is no evidence that Rivera is continuing to describe his products as professionally sewn.

**C. Wisconsin's Deceptive Trade Practice Act, Wis. Stat. § 100.18(1)**

Grasshopper's inability to establish any pecuniary loss from Rivera's alleged false advertising also dooms its claim under Wisconsin's Deceptive Trade Practice Act, Wis. Stat. § 100.18(1). To prove a claim under this statutory provision, plaintiff must demonstrate "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *MBS–Certified Pub. Accountants, LLC v. Wis. Bell Inc.*, 2013 WI App 14, ¶19, 346 Wis.2d 173, 828 N.W.2d 575 (quoting *Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 749 N.W.2d 544). Grasshopper has adduced no evidence establishing the third element.

In addition, this court and others in this circuit have held that Wis. Stat. § 100.18(1) "does not provide a cause of action for one vendor against a competitor for representations the competitor made to third parties." *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F.Supp.2d 915, 922 (W.D. Wis. 2010) (Crabb, J.). *See also Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F.Supp.2d 659, 663 (W.D. Wis. 2009) (dismissing § 100.18(1) claim where plaintiff had not alleged that it was induced to act because of defendant's misrepresentation); *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air–Conditioning Engineers, Inc.*, 775 F. Supp. 2d 1082, 1090 (E.D. Wis. 2011) (rejecting plaintiff's § 100.18 claim where plaintiff did not allege that it relied on defendant's alleged misrepresentation); *Novell v. Migliaccio*, 2008 WI 44, ¶51, 309 Wis. 2d 132, 749 N.W.2d 544 (construing statute to require proof by plaintiff that misrepresentation materially induced plaintiff to sustain a loss to state a claim under Wis. Stat. § 100.18). In other words, plaintiff generally must be a member of the "public" or, at least, of the audience to

whom the misrepresentation is directed, to bring a claim under Wis. Stat. § 100.18(1). Here, Grasshopper has not adduced facts showing that it—or anyone, for that matter—was misled by Rivera's mislabeled photo or his assertion that his backrests were professionally sewn. Accordingly, Grasshopper is not entitled to summary judgment on its claim under Wis. Stat. § 100.18(1).

### D.  State Common Law of Unfair Competition

Finally, Grasshopper contends that it is entitled to summary judgment on its claim that Rivera violated Wisconsin common law prohibiting unfair competition.  Citing *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 398-400, 280 N.W. 2d 129 (1979), Grasshopper contends that under Wisconsin common law, commercial rights are protected from "any form of commercial immorality" and governed by the principles of "old fashioned honesty."  According to Grasshopper, Rivera engaged in "commercial immorality" and was dishonest when he made the two statements above.  In addition, Grasshopper alleges that Rivera violated Wisconsin common law by copying Grasshopper's marketing statements and by attempting to coax Alsteens into a price-fixing scheme.

With respect to the alleged false advertising, Grasshopper has not made a persuasive case that Wisconsin recognizes such a claim under the common law of unfair competition.  *Hirsch*, the case Grasshopper cites, dealt with trade name infringement and misappropriation, not false advertising.  And again, Grasshopper has not shown that it was injured by any false advertising. Accordingly, it is not entitled to summary judgment on this claim.

14

Rivera's alleged copying of Grasshopper's marketing style could, in theory, amount to misappropriation of a property right. However, Grasshopper has not adduced evidence sufficient to establish that its marketing materials have value independent from the backrests themselves, which are not the subject of the summary judgment motion. For example, Grasshopper does not contend that the marketing materials are copyrighted or constitute protected trade secrets. Moreover, none of the evidence adduced on summary judgment shows that Grasshopper has a "distinct" marketing style that customers associate with Grasshopper. Finally, whether Rivera copied the language of Grasshopper's ads is a question of fact that cannot be resolved on summary judgment.

Last, Grasshopper contends that Rivera violated Wisconsin common law when he asked Alsteens to agree to set the same price for their respective backrests. Rivera denies that he solicited Grasshopper to engage in price fixing, so we have another dispute of material fact that precludes summary judgment. Even if Rivera admitted the conduct, however, Grasshopper has cited no authority to support its claim that a competitor may sue for "attempted price fixing" under the common law of unfair competition, particularly when the plaintiff has not shown any harm from the attempted scheme.

In sum, Grasshopper is not entitled to summary judgment on its common law claim for unfair competition.

ORDER

IT IS ORDERED that:

1. Plaintiff Grasshopper Motorcycles, Ltd.'s motion for partial summary judgment, dkt. 30, is DENIED; and

2. Defendant Tim Rivera's motion to dismiss, dkt. 54, is DENIED.

Entered this 26th day of February, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge